### SIMPSON *v.* THE STATE.

1. A person in a boat on the Savannah river, within thirty yards of the Georgia side, at a point where the river is at least one hundred and seventy-five yards wide, is *prima facie* in the State of Georgia.
2. The offence of shooting at another is committed in this State when one in the State of South Carolina, without malice aforethought, but not in his own defence or under other circumstances of justification, aims and fires a pistol at another who at the time is in this State, although the ball misses him and strikes the water in this State near the boat which he occupies.
3. The evidence warranted the verdict, and there was no error in denying a new trial.

May 29, 1893.

Indictment for assault to murder. Before Judge GUERRY. Hart superior court. March term, 1893.

McCURRY & PROFFITT, for plaintiff in error.

W. M. HOWARD, solicitor-general, by brief, *contra.*

LUMPKIN, Justice.

1. According to the convention of Beaufort, between the States of Georgia and South Carolina, agreed on by the commissioners of both States on the 28th of April, 1787, the current or main thread of the channel of the Savannah river is the boundary between the two States. Code, §16; Hotchkiss' Statutes, 913–917. This being so, at a point where the river is not less than one hun-

dred and seventy-five yards wide, a person in a boat not more than thirty yards from the Georgia side is, *prima facie*, in this State. In the present case, it was practically conceded that the testimony showed the person assaulted was on the Georgia side of the main current of the river.

2. Under the evidence introduced in behalf of the State, and which the jury evidently believed to be true, the accused shot twice at the prosecutor, intending the balls from the pistol used to take effect upon him. At the time of the firing, the prosecutor was in a boat upon the Savannah river, and within the State of Georgia, and the accused was standing upon the bank of the river in the State of South Carolina. It was conceded that if either or both of the balls had struck the prosecutor, an offence of some kind would have been committed in Georgia, upon the idea that the act of the accused took effect in this State; but it was contended that, inasmuch as the prosecutor was not struck, no effect whatever was produced in Georgia by the act in question. This contention is not well founded in point of fact, for the evidence shows conclusively that although the prosecutor was not injured, the balls did strike the water of the river in close proximity to him within this State, and therefore it is certain that they took effect in Georgia, although not the precise effect intended, assuming that the verdict correctly finds it was the deliberate purpose of the accused to actually shoot at the prosecutor. What the accused did was a criminal act, and it did take effect in this State. Mr. Bishop says: " The law deems that a crime is committed in the place where the criminal act takes effect. Hence, in many circumstances, one becomes liable to punishment in a particular jurisdiction while his personal presence is elsewhere. Even in this way, he may commit an offence against a State or country upon whose soil he never set his foot." 1 Bish.

Crim. Proced. §53. And see Bish. Crim. Law, §110. Of course, the presence of the accused within this State is essential to make his act one which is done in this State; but the presence need not be actual. It may be constructive. The well established theory of the law is, that where one puts in force an agency for the commission of crime, he, in legal contemplation, accompanies the same to the point where it becomes effectual. Thus, a burglary may be committed by inserting into a building a hook, or other contrivance, by means of which goods are withdrawn therefrom; and there can be no doubt that, under these circumstances, the burglar, in legal contemplation, enters the building. So, if a man in the State of South Carolina criminally fires a ball into the State of Georgia, the law regards him as accompanying the ball, and as being represented by it, up to the point where it strikes. If an unlawful shooting occurred while both the parties were in this State, the mere fact of missing would not render the person who shot any the less guilty. Consequently, if one shooting from another State goes, in a legal sense, where his bullet goes, the fact of his missing the object at which he aims cannot alter the legal principle. Cases are numerous in which it has been held, that where a person wounds another in one State or country, but the person wounded dies elsewhere, beyond its territorial boundaries, the courts of the State or country in which death occurred have jurisdiction to try the offence. A leading case on this line is that of Tyler v. People, 8 Mich. 320, in which there was a dissenting opinion by Justice Campbell. The ruling of the majority of the court, however, was approved in the case of Com. v. Macloon et al., 101 Mass. 1. Justice Gray, who delivered the opinion in the latter case, says, on page 7, that if one's "unlawful act is the efficient cause of the mortal injury, his personal presence at the time of its beginning, its

continuance, or its result, is not essential. He may be held guilty of homicide by shooting, even if he stands afar off, out of sight, or in another jurisdiction," and the words quoted are followed by apt illustrations. On page 17 of the same report, Justice Gray disapproves the dissenting opinion of Justice Campbell above mentioned. There is, however, a clear distinction between cases like the one just cited, where a wound is inflicted in one jurisdiction and death ensues in another, and cases like the present, where the accused in one State puts in operation a force which takes effect in another. On page 343 of 8 Mich., *supra*, this distinction is clearly stated by Justice Campbell. He says, the doctrine of constructive presence is not applicable to a case like that with which he was then dealing, and then uses the following language, which sustains our ruling in the case at bar. Speaking of constructive presence, he says: " All that it amounts to is, that the crime shall be regarded as committed where the injurious act is done. A wounding must, of course, be done where there is a person wounded, and the criminal act is the force against his person. That is the immediate act of the assailant, whether he strikes with a sword or shoots a gun; and he may very reasonably be held present where his forcible act becomes directly operative." This doctrine is supported by Rorer on Interstate Law, 241, 243–4, citing Johns *v.* State, 19 Ind. 421, 423. And see Whart. on Conflict of Laws, §825, and notes on pp. 717, 718; Whart. Cr. Law, §§278–280. In Adams *v.* People, 1 Comst. 173, it appeared that the accused forged a paper in Ohio, upon which he procured money in New York through an innocent agent, without going into the latter State. He afterwards voluntarily went into that State, and was indicted and tried for the crime. It was conceded by both court and counsel that he was guilty of committing the crime *in the State of New York*, and the

question upon which the case turned was simply whether or not, inasmuch as he owed no allegiance to that State, he could be tried and punished therein. In United States *v.* Davis, 2 Sumner, 482, it appeared that a gun was fired from an American ship lying in the harbor of Raiatea, one of the Society Isles, by which a person on a schooner belonging to the natives, and lying in the same harbor, was killed; and it was held that the act, in contemplation of law, was done on board the foreign schooner where the shot took effect, and that jurisdiction of the crime belonged to the foreign government, and not to the courts of the United States. In Hawes on Jurisdiction, §110, it is laid down that: "A crime may be committed within the jurisdiction of a State, although the person committing it never was within its borders, if the act takes effect there." An interesting discussion pertinent to the question involved may be found in 6 Criminal Law Magazine, beginning on page 155, in an article entitled "Dynamiting an Extra-Territorial Crime." "A party who, in one jurisdiction or in one county, may put in operation a force that does harm in another, may be liable in either for the offence." Brown on Jurisdiction, §92. This section also contains numerous illustrations which are apt and pertinent. See, also, Rex *v.* Rogers, 14 Cox's Crim. Cas. 22.

The above authorities demonstrate beyond question that a criminal act begun in one State and completed in another renders the person who does the act liable to indictment in the latter. In view of these authorities, there cannot in the present case be any doubt whatever that Simpson would have been indictable in Georgia if a ball from his pistol had actually wounded Sadler. That this would be true` is too well established for serious controversy. The able and zealous counsel for the plaintiff in error candidly conceded that such would be the

law, but contended that as the balls "took no effect in Georgia," the entire act of the accused was committed in South Carolina, and that he really did nothing in this State. We have endeavored to show that this contention is not sound. As we have already stated, the act of the accused did take effect in this State. He started across the river with his leaden messenger, and was operating it up to the moment when it ceased to move, and was therefore, in a legal sense, after the ball crossed the State line up to the moment that it stopped, in Georgia. It is entirely immaterial that the object for which he crossed the line failed of accomplishment. It having been established by abundant authority and precedent, that, in crime, there may be a constructive, as well as an actual, presence, there can be, in a case of this kind, in which the act of the accused, when analyzed, is simply an attempt to unlawfully wound another by shooting, no rational distinction, in principle, as to the question of jurisdiction, whether the attempt is successful or not. The criminality was complete, and the offence was perpetrated in Georgia, irrespective of results.

3. The evidence was conflicting. According to that introduced by the accused, and supported by his statement, he did not intend to shoot the prosecutor at all; but the evidence of the latter was amply sufficient to warrant the jury in concluding that the accused actually, deliberately, and without any legal excuse or justification whatever, undertook to shoot him. In view of this evidence, the jury might well have found the accused guilty of assault with intent to murder, and he cannot complain that they found him guilty of the lesser offence of shooting at another. There was no error in denying a new trial.          *Judgment affirmed.*