## In re WILLIAM SULTAN.

*Habeas Corpus—Fugitive from Justice—Extradition—Discretion of Governor.*

1. Departure from a jurisdiction after the commission of the act, in furtherance of the crime subsequently consummated, is a flight from justice within the meaning of the law; therefore,

2. One who, while in another State procured, by false representations, goods to be thence shipped to him in this State, to which he returned after making the false representations, but before the goods were shipped, is a fugitive from the justice of such other State.

3. The Governor is invested by the law with a discretion to issue a warrant for the arrest of a fugitive from justice of another State upon the requisition of the Executive thereof, and to revoke it, if, in his opinion, the warrant is sought for ulterior purposes; and, although the Courts may review and control his action in regard to points of law involved in extradition proceedings, yet they will not enquire into the motive and purpose of such proceedings, or interfere with any matter connected therewith which lies within the discretion of the Governor.

PETITION for writ of *habeas corpus*, heard before *Hoke, J.*, at Newbern, N. C., on the 9th day of June, 1894.

The prisoner was discharged, and the relator thereafter obtained a writ of *certiorari* to have the action of his Honor reviewed in this Court.

*Messrs. C. R. Thomas* and *P. H. Pelletier*, for relator.
*Messrs. W. W. Clark* and *O. H. Guion*, contra.

BURWELL, J.: The record shows that the Governor of the State of Pennsylvania made a requisition on the Governor of this State for the arrest of the petitioner William Sultan, who had been indicted in the former State for obtaining goods under false pretences from the firm of Morris Newberger & Son, of the city of Philadephia. His Excellency,

the Governor, upon an examination of the requisition and the accompanying papers, issued his warrant in due form for the arrest of the alleged fugitive and his delivery to the agent of the State of Pennsylvania.

Thereupon a writ of *habeas corpus* was sued out in his behalf, and upon hearing the matter his Honor discharged the petitioner from custody, assigning two causes for his action : First, his finding as a fact that the petitioner was not a fugitive from justice; and second, that the process was instituted and procured for the purpose of enforcing and collecting a debt due to Morris Newberger & Son.

The indictment found against the petitioner in the city and county of Philadelphia charges the petitioner with having obtained from Morris Newberger & Son, on the 17th day of September, 1892, certain goods by certain false and fraudulent pretences. It is in proper form, and it is duly certified that the offence therein charged is a crime under the laws of the State of Pennsylvania.

The guilt or innocence of the petitioner cannot be enquired of in this proceeding. It is not pretended that the petitioner was not in the city of Philadelphia on the 17th day of September, 1892, the date when it is charged in the indictment that he made the false pretence and thereby obtained the goods. If, therefore, we consider only the allegation of the indictment, and the fact that the person therein charged with a crime against the laws of Pennsylvania is now in this State, we must conclude that, being within this jurisdiction, he is here to be considered a fugitive from justice. This seems to be conceded.

But it appears from the affidavit of Morris Newberger, which constitutes a part of the document upon which the Governor issued his warrant, and from the affidavit of the petitioner that the goods, which in the indictment are said to have been obtained by the petitioner on the 17th day of September, 1892, the date of the alleged false representation,

were not in fact delivered to him on that day, but were, on the 6th day of October, 1892, delivered by Morris Newberger & Son to a common carrier in the city of Philadelphia, consigned to the petitioner at Newbern, in this State, where the petitioner resided, and whither he had gone after making a contract on the 17th of September for the shipment of the goods to him at his home in this State.

Assuming, therefore, that the petitioner, being in the city of Philadelphia on September 17, 1892, máde then and there to citizens of Pennsylvania false and fraudulent pretences, contriving and intending by means thereof to induce them to deliver on October 6, 1892, certain goods to a common carrier in said city for shipment to him in this State; and thereafter, but prior to October 6, left that State and returned to his home here, we think he is a " fugitive from justice." As we have said, the truth or falsity of the charge that he made the false pretences cannot be inquired into. If the delivery to the common carrier be considered a delivery to him (and we see no reason why it should not be so considered), the whole crime, if there was one, was committed within the jurisdiction of the Court where the indictment has been found.

But it does not seem to us to be essential that we should hold the delivery to the carrier equivalent to a delivery to the petitioner before we can adjudge that the crime charged was committed within the jurisdiction of the Pennsylvania Court. For, if the false pretence was used in that State by the petitioner, there present, to induce a citizen of that State to part with his property, by sending it to the petitioner in this State, and the petitioner then fraudulently obtained *here* the possession of the goods, the Court of that State has jurisdiction of the offence, and the Court of this State has jurisdiction also. It is said : " Where a false pretence is uttered in A, and the money obtained in B, the *venue* may be laid either in A or B. This, in England, is finally settled by

statute, which, however, is in this respect affirmatory of the common law. In several instances it has been held that the forum that first takes cognizance of the offence, whether it be the forum of the uttering of the pretence or that of the forwarding of the goods, attaches to itself jurisdiction." Wharton's Cr. Law, § 1206. This is quoted with approval in 2 Moore on Extradition, page 942, and that author adds: "This rule does not apply to false pretences only, but obtains in regard to various other kinds to the commission of which several facts, which may occur at different times and places, are essential. In such a case, it may be held that a man may be regarded as a fugitive from the justice of the State where, being corporally present, he commits any of the criminal acts that respectively give jurisdiction to punish the offence. * * * As the law does not separate the elements so as to destroy jurisdiction of the offence, we should not divide them so as to defeat the recovery of jurisdiction over the offender."

It seems that if a person, being beyond the limits of the State, by means of a false pretence communicated in some way—as by letter—to a person in this State, obtains goods from that person, he may be indicted here, though he has never actually come within the State, and, if afterwards found within the jurisdiction of our Courts, may be arrested and tried. 1 Bishop Cr. Law, 7th Ed., § 109; *State* v. *Hall*, 114 N. C., 909. It may be that he could not be brought by extradition proceedings into the State, for, in such case, he might not be considered "a fugitive from justice;" but if he voluntarily comes within the jurisdiction he may be punished. As is said in *People* v. *Adams*, 3 Denio, 190: "Impotent, indeed, must our laws be, if the contriver of the mischief, by whose efforts alone the cheat was effected, can escape punishment on the ground that he was out of the State when his fraudulent machinations were concocted, and when they took effect within it." *A fortiori* should he be

punishable here, if he was actually present in the State when he concocted his fraudulent machinations, and only retired from the State after he had put them in operation.

If, therefore, the petitioner did go to the city of Philadelphia, and there make to Morris, Newberger & Son false and fraudulent pretences, and thereby induced them to sell him goods to be shipped to him at his home in this State, and the goods were so sent, he is amenable to the laws of the State of Pennsylvania.

He was actually in that State when the crime charged against him was begun. Now, when he is sought by extradition process, the crime is completed. After beginning the perpetration of the crime, he left that State. The purpose he had in view in leaving the State is immaterial. *Kingsbury's case*, 106 Mass., 223; *Roberts* v. *Reily*, 116 U. S., 80. He is found here, and must be deemed a fugitive from the justice of that State within whose borders he, being actually present, put in operation an offence against her laws. *In re Cook*, 49 Fed. Rep., 833.

Upon this subject, in the last cited case, JENKINS, J., said: " The purpose of the constitutional provision was that criminals should find no asylum within any State of the Union; that ' the law might everywhere and in all cases be vindicated.' It will not do to refine too curiously upon such enactments, so that the very design of the law shall prove abortive, so that that shall become a shield and a protection which was designed as a weapon of offence. Can it be that one may not be regarded as a fugitive from justice who, within a State hires another to kill and murder, but before the killing departs the jurisdiction to avoid the consequences of the murder he has designed? Can it be that if one that is within a State makes false representations to procure the goods of another, and departs that State before the other actually parts with his property on the faith of these representations, he may not be deemed a fugitive from justice?

Or, to use the forcible illustration of counsel at the argument, if one places a dynamite bomb with clock attachment on the premises of another that will explode only after the lapse of a certain time, and death results, so that the act is murder, but departs the State before the explosion to avoid the consequences of his act, is he not to be regarded as a fugitive from justice? To put the question is to answer it. The subsequent event was the consequence of the act, naturally resulting from it. The subsequent event was designed to happen from and by reason of the act done. The event, when it occurs as the consequence of the act, gives quality to the act, rendering it criminal. The result was the foreseen and designed consequence of the act, stamping it as a crime. It is immaterial whether the agency employed be an inanimate object or a sentient being. The result was designed by and naturally flowed from his original act, which, by reason of the result and the foreseen and intended result, is criminal. Departure from the jurisdiction after the commission of the act, in furtherance of the crime subsequently consummated, is a flight from justice within the meaning of the law."

We think that his Honor also erred when he undertook to inquire into the motive and purpose of this extradition proceeding. In such matters the Judiciary may review and control the action of the Governor in regard to points of law, but cannot interfere with such action in regard to any matter within the discretion of the Governor. *Hughes'* case, Phil. Law, 57. The Executive and Judicial are co-ordinate departments of the government. The Judiciary will control and correct the acts of the Executive officers only when they are acting contrary to law or without its sanction. In this matter, as we have said, the Governor was authorized by the law, upon the document laid before him, to issue his warrant for the arrest and delivery of the petitioner. The law which clothes him with the power to issue that warrant,

invests him with a discretion not to issue it, or, if he has issued it, to revoke it, if, in his opinion, his warrant is sought, not to aid in bringing the alleged criminal to trial for his offence, but for some other ulterior purpose. It has been well said : "In our polity the Judiciary have a power and are clothed with a duty unique in the history of the governments, viz., the power and duty to.declare legislative enactments and executive acts which are in conflict with our written Constitutions to be for that reason void and of no effect. In this America has taught the world the greatest lesson in government and law it has ever learned, namely, that law is not binding alone upon the subject, and that the conception of law never reaches the full development until it attains complete supremacy in the form of written Constitutions, which are the supreme law of the land, since their provisions are obligatory both upon the State and upon those subjected to its rule, and equally enforcible against both, and, therefore, *law* in the strictest sense of the term."

As in the performance of its "unique duty" the Judiciary will declare no enactment of the Legislative Department void, because unconstitutional, unless it is plainly so; likewise, it will, with equal solicitude, abstain from encroachment on the province of the Executive Department, and will never declare the acts of its officers illegal unless clearly so and not within the scope of that discretion with which the *law* itself has clothed them. The judiciary cannot review or control the executive in its exercise of that discretion.

Reversed.