Ex parte HOFFSTOT.

(Circuit Court, S. D. New York. May 12, 1910.)

1. CONSPIRACY (§ 23*)—PLACE OF CRIME—PRESENCE OF DEFENDANT.
   One may be guilty of conspiracy to bribe municipal officers of a city, without ever having been personally present within the state where such city is located. ·
   [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 32; Dec. Dig. § 23.*]

2. EXTRADITION (§ 21*)—INDICTMENT.
   A man may be indicted in a case in which he cannot be extradited.
   [Ed. Note.—For other cases,. see Extradition, Dec. Dig. § 21.*]

3. EXTRADITION (§ 30*)—FUGITIVE FROM JUSTICE.
   Petitioner, a resident of New York, indicted in Pennsylvania for conspiracy to bribe members of the Pittsburg city council, could not be extradited, in the absence of some proof that he had been physically present in Pennsylvania when the offense was committed, as otherwise he could not be a fugitive from justice of that state.
   [Ed. Note.—For other cases, see Extradition, Cent. Dig. § 32; Dec. Dig. § 30.*]

4. EXTRADITION (§ 30*)—FUGITIVE FROM JUSTICE—LEAVING STATE—PURPOSES.
   Where accused has committed a crime in one state, and afterwards leaves it, the right of extradition exists, without reference to his purpose in going.
   [Ed. Note.—For other cases, see Extradition, Cent. Dig. § 32; Dec. Dig. § 30.*
   Fugitives from justice under extradition laws, see note to In re Strauss, 63 C. C. A. 104.]

5. EXTRADITION (§ 39*)—PRESENCE IN STATE—EVIDENCE.
   Where there was specific evidence that petitioner, a resident of New York, participated there in a conspiracy to bribe members of the city council of Pittsburg to select certain banks in Pittsburg, of one of which petitioner was president, as city depositories, and there was substantial evidence from which a jury would be justified in drawing an inference that petitioner was in Pittsburg on a day when some act or acts in furtherance of the conspiracy were performed, there was sufficient proof that he was a fugitive from justice to justify his extradition to Pennsylvania.
   [Ed. Note.—For other cases, see Extradition, Cent. Dig. § 45; Dec. Dig. § 39.*]

Application of Frank N. Hoffstot for a writ of habeas corpus to obtain his release from a Governor's extradition warrant. Denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Joline, Larkin & Rathbone (Adrian H. Joline, John D. Lindsay, Adrian H. Larkin, and Harold Russell Griffith, of counsel), for petitioner.

William A. Blakely and Warren I. Seymour (George Gordon Battle, of counsel), for the State of Pennsylvania.

Charles S. Whitman (Charles A. Perkins, Robert S. Johnstone, and Stanley L. Richter, of counsel), for the State of New York.

HOLT, District Judge. This is a writ of habeas corpus to test the legality of the detention of the petitioner, Frank N. Hoffstot, who is held under a warrant issued by the Governor of the state of New York directing the surrender of Hoffstot to the authorities of Pennsylvania as a fugitive from justice. On April 6, 1910, an indictment was found against Hoffstot by the grand jury of the county of Allegheny, Pa. This indictment contains five counts, charging, in substance, in different forms, that Hoffstot conspired with James W. Friend and Charles Stewart to bribe members of the council of the city of Pittsburg to pass an ordinance designating certain banks of the city of Pittsburg as depositories for the public funds of that city. Hoffstot is a citizen of the state of New York, residing and doing business in the city of New York. He is also president of the German National Bank of Pittsburg, and has other business interests there. He is in the habit of going to Pittsburg on business once a month and staying there for a day or two. Each count in the indictment alleges that the crime was commited on the 3d day of June, 1908. It was proved at the hearing before the Governor of New York, and is admitted, that Hoffstot was in New York, and not within the state of Pennsylvania, on the 3d day of June 1908; that he was in Pittsburg in the latter part of April, on the 28th of May, and on the 29th of June, 1908; and that he was absent from Pennsylvania the rest of those months.

The counsel for the petitioner claims that the Governor of New York had no jurisdiction to issue a warrant of surrender, because it was admitted that Hoffstot was not within the state of Pennsylvania on June 3d, the date stated in the indictment as the time at which the crime was committed, and it did not appear that he was within that state at any other time when the crime was committed. It is conceded that the date of a crime stated in an indictment is not necessarily essential, and that if a defendant is not prejudiced in his defense by an error in the date he may be convicted upon proof of the commission of the crime charged upon a different date from that stated in the indictment. But it is claimed that the Governor was without jurisdiction to issue the warrant unless it was shown either that there was proof before the grand jury or that proof has been furnished to the Governor of New York that Hoffstot was in Pennsylvania at the time of the commission of the crime, and it is denied that there is any such proof in this case.

The crime of conspiracy, with which the defendant is charged in the indictment, is one of which he may be guilty without ever having engaged in the conspiracy or done anything in pursuance of it while

180 F.—16

physically in the state of Pennsylvania. The charge is, in substance, that he took part in a conspiracy to bribe members of the Pittsburg council to designate certain banks, and among others the one of which he was president, to be depositories of the city money. He may have engaged in such a conspiracy by letters, or telephone conversations, or through agents by whom he, while in New York, communicated with others. He may therefore have been subject to indictment in Pennsylvania without ever having been physically present in that state. There are various cases in which a person may do something in one state which will result in a crime committed in another state, as when a shot is fired in one state which kills a man in another, or property is obtained from one state by false pretenses uttered in another, or a libel is written in one state and published in another. In such cases usually the criminal may be indicted and tried either in the state in which he did the act which caused the crime or in which it was ultimately completed.

But a man may be indicted in a case in which he cannot be extradited. Under the constitutional provision, and the statute passed in conformity with it, providing for the extradition of fugitives from justice from one state to another, it is necessary that the defendant should have been physically present in the state in which it is alleged that the crime was committed, at the time when it was committed, in order to make him, on his subsequent departure from the state, a fugitive from justice. Hyatt v. Corkran, 188 U. S. 691, 23 Sup. Ct. 456, 47 L. Ed. 657.

The question in this case, therefore, is whether there was any proof before the Governor that Hoffstot was in the state of Pennsylvania when the crime, or any material part of the crime, with which he is charged was committed. On that question the evidence is very meager and unsatisfactory, and I have felt great difficulty in reaching a conclusion. The grand jury handed down a presentment, upon which the indictment was authorized by the court, stating the facts concerning the alleged bribery which had been ascertained by its investigation. In this presentment it is nowhere asserted that Hoffstot did any act in Pennsylvania in connection with said conspiracy, and various acts of Hoffstot are so stated in it as to show, or tend to show, that they were done in New York. For instance, it asserts that the original arrangement for the payment of the bribe was made between Stewart, a member of the Pittsburg council, and Friend, "representing Frank N. Hoffstot"; that Stewart and Friend first asked Blakeley to act as stakeholder, who refused; that subsequently an arrangement was made "whereby said Frank N. Hoffstot would pay, or cause to be paid, to said Charles Stewart the amount of money agreed upon in the city of New York, in order, if possible, to avoid all criminal liability in the county of Allegheny"; that "pursuant to said agreement" Hoffstot "did pay, or cause to be paid," to Stewart $52,500; that between June 22, 1908, and July 9, 1908, Hoffstot "did call up by telephone" James M. Young, cashier of the Second National Bank of Pittsburg, and request him to forward to a person "at a certain address in New York" said sum of money as a bribe.

Evidence, however, was taken before the Governor of New York upon the question whether Hoffstot did anything in furtherance of the conspiracy in Pennsylvania. Mr. Seymour, the assistant district attorney of Allegheny county, was examined, and he testified that there was evidence before the grand jury, upon which this indictment of conspiracy was found, as to transactions tending to prove the conspiracy which extended over a period from about the 1st of May to about the 1st of July, 1908. The Governor declined to go into the details of these transactions. Upon cross-examination Mr. Seymour was asked whether there was any evidence before the grand jury tending to show any act on the part of Mr. Hoffstot committed in the state of Pennsylvania when he was physically present there at any time during the period mentioned to which he at first replied that he did not think there was. He subsequently, however, testified upon further examination that there was circumstantial evidence as to acts by Mr. Hoffstot in the state of Pennsylvania while he was within that state during that period; that there was no direct, positive testimony by any one who saw him there, but there was circumstantial testimony that he was there.

This evidence is undoubtedly vague; but I think that the substantial effect of it is that, while there was no specific evidence by an eyewitness that Hoffstot was in Pennsylvania on any particular day on which any act in furtherance of this conspiracy was done, there was circumstantial evidence from which a jury would be justified in drawing the inference that he was there on such a day. Now, if it shall be proved that a conspiracy was entered into by Mr. Hoffstot, and circumstantial evidence shall be offered sufficient to authorize a jury to draw the inference that he was present in Pennsylvania when any act material in carrying out the objects of the conspiracy was done, I think that he would be properly held to have been within the state of Pennsylvania at the time that the crime charged in the indictment was committed, and that his subsequent return from that state to New York would render him a fugitive from justice within the meaning of the United States Constitution and statute upon that subject.

It is well settled that the purpose with which a man who has committed a crime in a state leaves it is immaterial. It is not necessary to prove that he fled from fear of arrest. If he has committed a crime in a state, and afterwards leaves it, the right of extradition exists. Roberts v. Reilly, 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544. The provision for the extradition of criminals is essential to the efficient administration of criminal justice. When an indictment and the requisition papers issued by the Governor of the demanding state are regular and sufficient upon their face, and when there is some evidence which, although not of a very satisfactory kind, is sufficient to satisfy the Governor of the surrendering state, and he has issued his warrant for extradition, it is well settled that the judiciary should not interfere on habeas corpus and discharge the prisoner upon technical grounds, unless it is clear that the Governor's action in issuing the warrant plainly contravenes the law. Compton v. Alabama, 214 U. S. 1, 29 Sup. Ct. 605, 53 L. Ed. 885; In re Strauss, 126 Fed. 327, 63 C. C. A. 99.

The petitioner's counsel have submitted to me a very recent opinion of Gov. Fort of New Jersey upon an application for a requisition upon the Governor of Illinois for the extradition of J. Ogden Armour. Armour was indicted in New Jersey, with others, for a conspiracy to produce an artificial scarcity in the supply of meats and to increase the price thereof. The proof upon which it was claimed that he was a fugitive from the justice of New Jersey is contained in an affidavit of the chief steward of the steamship Kaiser Wilhelm II, that on April 28, 1908, Armour left the city of Hoboken upon said ship on a voyage to Bremen, and that on June 15, 1909, he arrived in Hoboken, on his return from Bremen, on the same vessel. Gov. Fort held that there was nothing in these facts to indicate that Armour was a fugitive from justice from New Jersey. Obviously all that occurred was that Armour, in going from Chicago, where he resided, to Europe, took passage on the steamer at Hoboken, and on returning from Europe to Chicago landed at Hoboken. In this case, if the only evidence of Hoffstot's presence in Pennsylvania during the time in which it is alleged that he engaged in the conspiracy had been that he passed through the state as an incident of a journey, as, for instance, that he went from Chicago to New York over the Pennsylvania Railroad, I should have no doubt that the proof of his commission of the crime, or any material part of it, in the state of Pennsylvania, was insufficient.

But the facts in this case are much stronger. It is alleged in the second count of the indictment that Hoffstot, with the other conspirators, received from each of three banks, one of which was the German National Bank of Allegheny, of which he was president, $17,500, making $52,500 in the aggregate, and it is alleged in the presentment that Hoffstot paid to Stewart $52,500 pursuant to the agreement to make such payment for the purpose of securing the selection of the said three banks as city depositories of the city of Pittsburg. It may well have happened that Hoffstot, at some of his visits to the city of Pittsburg, engaged in the conspiracy to pay this money, or did some act in connection with its collection and payment. The case as presented in the indictment, the presentment, and the evidence stands on an entirely different footing from that of a man whose extradition is sought as a fugitive from justice on the bare fact that he has passed through the state upon a continuous journey.

My conclusion is that the writ should be dismissed; but as, in my opinion, the question involved in this case is doubtful, a stay will be granted if the petitioner desires to appeal.