### 3322.   JAMES *v.* THE STATE.

1. The act of the General Assembly approved August 12, 1910 (Acts 1910, p. 134), making it unlawful to have or carry about the person any pistol or revolver, without first obtaining license from the ordinary, is held by the Supreme Court to be constitutional, in *Strickland* v. *State,* 137 *Ga.* 1 (72 S. E. 260).

2. The boundary line between the States of Georgia and South Carolina is that agreed on by the commissioners of both States at the convention of Beaufort on April 28, 1787.   This boundary line, as then fixed and established, was not altered by the fact that subsequently the United States government, in the course of its work to improve the navigation of the Savannah river, changed the location of the main current cr channel of the river; but it remains where the main channel or current of the river flowed naturally when the boundary line was originally fixed and established.

3. The evidence shows that the offense was committed at a point on the bridge which connects Georgia with South Carolina, and on the Georgia side of the main current or channel of the river, as said current or channel was located when it was originally fixed and established as the boundary line between the two States.   The venue was thus fully proved.

DECIDED NOVEMBER 7, 1911.

Accusation of carrying pistol without license; from city court of Richmond county—Judge W. F. Eve.   February 27, 1911.

*E. Foster Brigham, B. B. McCowen, Isaac S. Peebles Jr.,* for plaintiff in error.

*James C. C. Black Jr., solicitor,* contra.

HILL, C. J.   George James was convicted of a violation of the act of the General Assembly (Acts 1910, p. 134) making it a misdemeanor for one to carry on his person a pistol without having procured a license as provided by the act.   The record raised two questions: (1) as to the constitutionality of the act upon which the indictment was framed; and (2) whether the jurisdictional fact of venue was proved.

The first question was settled by the Supreme Court in the case of *Strickland* v. *State,* 137 *Ga.* 1 (72 S. E. 260), on certificate from this court for instructions.

The evidence necessary to determine the question of venue, briefly stated, is as follows:   James was arrested by a police officer of the city of Augusta on the bridge over the Savannah river, known as the "Center street bridge;" this bridge connecting the States of Georgia and South Carolina.   At the time of the arrest James had a revolver on his person and had not procured a license to carry it.   The arrest was made about the middle of the bridge, and at a point which would be in the State of South Carolina if the present channel of the Savannah river is to be accepted as the boundary line between these two States; but if the boundary line between the two States is the current or main thread of the channel of the river as originally fixed and determined by the treaty of Beaufort as the boundary line between them, then the offense was committed in the State of Georgia.   So the question which must determine the venue in the present case is dependent upon the location of the boundary line between the States of Georgia and South Carolina as above indicated.   The evidence further showed that, for a distance of about a mile above and below where the Center street bridge crosses the river, the United States government, by a series of training dikes, has diverted the natural channel of the river from the South Carolina side to the Georgia side, for the purpose of improving the navigation of the river on the Georgia side at the city of Augusta, and that before the building of these dikes the channel of the river was 600 or 700 feet from the Georgia side, and 200 or 300 feet from the South Carolina side, and was gradually changing to the Carolina side, but since the building

of the dikes the current of the river is only 250 feet from the Georgia side. In other words, the building of the training dikes by the United States government has changed the natural current of the river, so that, instead of being 600 to 700 feet from the Georgia side, as formerly, it is now only 250 feet from the Georgia side. According to the treaty of Beaufort between the States of Georgia and South Carolina, agreed on by the commissioners of both States on the 28th of April, 1787, the current or main thread of the channel of the Savannah river was established as the boundary between the two States. Political Code (1910), § 16; Hotchkiss's Statutes, §§ 913-917; *Simpson* v. *State,* 92 *Ga.* 41 (17 S. E. 984, 22 L. R. A. 248, 44 Am. St. R. 75). The boundary line so fixed was intended to be a permanent boundary line between the two States, subject to be changed only by the subsequent joint action of the two States.

There is no Georgia decision exactly in point, but the question here involved has been before the Supreme Court of the United States in several cases, and that august tribunal has clearly laid down the rule by which the question in this case can be determined. In the case of State of Nebraska *v.* State of Iowa, 143 U. S. 369 (12 Sup. Ct. 396, 36 L. ed. 186), in a very learned opinion by Justice Brewer, it is held that where the boundary between States or nations is, by prescription or treaty, found in running water, accretion, no matter to which side it adds ground, leaves the boundary still the center; that avulsion has no effect on the boundary, but leaves it in the center of the old channel. In other words, an accretion on an ordinary river would leave the boundary between two States the varying center of the channel, and an avulsion would leave the boundary the center of the abandoned channel. See, also, a very elaborate opinion by Attorney-General Cushing, in which the subject is very exhaustively considered and the above distinction made; also the general subject treated in Gould on Waters, § 159, and Angell on Water Courses, § 60. In the case of Missouri *v.* Nebraska, 196 U. S. 23 (25 Sup. Ct. 155, 49 L. ed. 372), which was a case to determine the boundary line between the two States and to define what was the center of the main channel of the Missouri river, it was held that accretion is the gradual accumulation by alluvial formation, and, where a boundary river changes its course gradually in such manner, the

boundary remains the varying center of the channel, but that avulsion is a rapid change in the course or channel of a river, and does not work any change in the boundary, which remains as it was in the center of the river, although no water may be flowing therein. These principles apply alike whether the river is a boundary line between private property or between States and nations. Now, the boundary line between the States of Georgia and South Carolina, as fixed by the treaty of Beaufort in 1787, was the current or main thread of the Savannah river between designated points. There is no evidence that this channel has been changed, either by the gradual process of accretion or by the sudden and violent process of avulsion.

It is insisted, however, by learned counsel for the plaintiff in error, that this current or main thread of the channel has been changed by the work of the United States government for the purpose of improving the navigability of the Savannah river near the city of Augusta, and that the channel of the river is now located much nearer the Georgia side, and that this change in the channel or current of the river changes ipso facto the boundary line between the two States. In support of this contention it is said that the constitution of the United States (art. 1, section 8, par. 3) gives to the Federal government control of all navigable rivers between States, and that it therefore follows that any change in the channel or current of a navigable river is a lawful change, and thereafter the channel of the river is fixed, and the boundary line follows this current or channel. Unquestionably the United States government, by the provision of the constitution above quoted, has control over navigable rivers for the purpose of improving navigation; but the exercise of this right can not in any sense affect the boundary lines as fixed by treaties, or law, or prescription, between the States, or between riparian owners. Where grants of land border on navigable streams, no change which the United States government might make in the course of such stream could affect in any way the rights of the riparian owners as fixed and determined by deeds or prescription, and, of course, where a river is made a boundary line between two States, if the course of the river is changed or diverted by the United States government in the exercise of its authority to improve navigation, the change in the course of the river would not affect the boundary line, but

the boundary line would remain as fixed by law, treaty, or prescription. The legal effect of the act of the government in changing the main channel or current of the river is analogous to a change caused by avulsion, and not by accretion. The treaty of Beaufort, as therein stated, settled and adjusted the boundary differences between the States of Georgia and South Carolina, and established a fixed and permanent boundary line between them, and this boundary line was distinctly declared to be the current or main thread or channel of the Savannah river between the two States, between designated points on said river. This boundary line, so fixed and established by authority of the two sovereign States, could not be changed or affected by any act of the Federal government in pursuance of its power over navigable rivers. Indeed, we do not think that this right to regulate and improve navigable rivers has any relation whatever to the question of boundary lines.

We conclude, therefore, that the existing boundary line between the States of Georgia and South Carolina is as fixed and established by the treaty of Beaufort; and this being true, under the evidence, the offense in this case was committed within the State of Georgia, and the venue was sufficiently shown.

*Judgment affirmed.*