**UNITED STATES ex rel. MILLER v. WALSH, Sheriff of Cook County, Ill.**
**No. 48-C-1749.**

United States District Court
N. D. Illinois, E. D.
Sept. 13, 1949.

Joseph E. Clayton, Jr., Chicago, Ill., for petitioner.

John S. Boyle, State's Attorney, by James V. Cunningham, Assistant State's Attorney, Chicago, Ill., for respondent.

IGOE, District Judge.

This proceeding was commenced by Raymond Miller filing a petition in this court for writ of habeas corpus to obtain his discharge from the custody of the Sheriff of Cook County, Illinois, by whom the petitioner is being held for extradition to the State of Michigan, to answer the charge of assault with intent to rob—armed. The extradition proceedings arose in the following manner:

On July 8, 1947, a complaint was filed in the Police Court of Grand Rapids, Michigan, duly executed and verified by Walter Coe, charging the petitioner with having committed, on the 9th day of March, 1947, a felonious assault with intent to rob and steal, while armed, in violation of the laws of the State of Michigan. Upon the filing of the complaint, the Judge of the Police Court of Grand Rapids, Michigan, issued a warrant for the relator's arrest. The warrant recites the offense charged in the verified complaint. The complaint and warrant, together with the affidavits of Walter Coe, a police officer of Grand Rapids, and Menso R. Bolt, the prosecuting attorney for the County in Michigan, in which Grand Rapids is located, were forwarded to the Governor of Michigan with a request for the requisition of the petitioner from the State of Illinois.

On July 25, 1947, the Governor of the State of Michigan issued his duly executed certificate, with the above described complaint and warrant attached thereto, certifying them to be authentic and duly authenticated in accordance with the laws of the State of Michigan, and requesting the Governor of the State of Illinois to apprehend the relator and to deliver him to Walter Coe, who was authorized to receive the relator and to convey him to the State of Michigan to answer the offense charged in the complaint. The affidavits of Coe and Bolt accompanied the request for requisition.

334

The evidence shows that the Governor of the State of Illinois caused the petitioner to be arrested in Chicago, Illinois, and then granted the request of the Governor of the State of Michigan for the rendition of the petitioner to that State, upon the documents above referred to. Petitioner was remanded to the Sheriff of Cook County, Illinois, to be delivered to the Agent of the State of Michigan. Thereupon, petitioner filed a petition in the Criminal Court of Cook County, Illinois, for a writ of habeas corpus to obtain his release. That petition was denied; whereupon petitioner filed the instant petition in this court requesting the issuance of a writ of habeas corpus to obtain his discharge from custody under the order of extradition which has been entered by the Governor of the State of Illinois.

In the instant petition for habeas corpus, petitioner charges that he is not a fugitive from Justice in the State of Michigan; that he did not commit the crime for which he was ordered extradited; that the authenticated complaint filed with the Governor of the State of Illinois is not a valid indictment or affidavit made before a Magistrate as required by the statutes of the United States; that the warrant of extradition was issued on information based only on the information and belief of the City Attorney of Grand Rapids, Michigan; that the extradition proceedings were not instituted and prosecuted in good faith; and that the papers and documents filed with the Governor of the State of Illinois were not in proper form and do not comply with the Federal Statutes.

The petition further charges that the petitioner was not physically present in the State of Michigan on the date of the offense as charged in the duly authenticated complaint, namely, March 9, 1947, and that this fact was conceded by the Agent of the Governor of the State of Michigan at the hearing on the petition for habeas corpus in the Criminal Court of Cook County, Illinois.

Extradition proceedings are controlled by Article 4, Section 2 of the Constitution of the United States, and by Section 5278 of the Revised Statutes, 18 U.S.C.A. § 662

[1948 Revised Criminal Code, 18 U.S.C.A. § 3182]. Section 5278 of the Revised Statutes provides: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory."

Considering first the petitioner's contention that the documents which were forwarded by the Governor of the State of Michigan to the Governor of the State of Illinois for the extradition of the petitioner are not in proper form and do not comply with the federal statutes. In support of this contention, petitioner cites the cases of Ex parte Hart, 4 C.r., 63 F. 249, 28 L. R.A. 801, and U. S. ex rel. McCline v. Meyering, 7 Cir., 75 F.2d 7.6. The case of Ex parte Hart involved the question of the sufficiency of an information as the basis for extradition proceedings. The information was verified only upon information and belief. The Court held that under the Statute governing extradition proceedings, the request for extradition must be based upon an indictment or an affidavit made before a magistrate charging the crime and that an information verified only upon information and belief did not satisfy the

requirements of the statute. The case of United States ex rel. McCline v. Meyering holds that extradition should not be granted solely upon a verified warrant which is not supported by the indictment or affidavit specified in the Statute; and that the Federal Statute was enacted so as to insure a person of his liberty until the requirements of the statute had been fulfilled.

■ In the instant case the extradition proceedings are based upon a positive complaint filed before the Judge of the Police Court of the City of Grand Rapids, Michigan, charging the petitioner with having committed the crime of assault with intent to rob—armed, in violation of a specific criminal statute enacted by the State of Michigan. The complaint is duly signed and sworn to by Walter Coe before the Judge of the Police Court of Grand Rapids, Michigan. The complaint and the warrant issued thereon for the apprehension of the petitioner, were duly certified as authentic by the Governor of the State of Michigan to the Governor of the State of Illinois with the request that the petitioner be apprehended and delivered to the Agent of the State of Michigan to be dealt with according to law. Clearly, the complaint, which states the offense in positive terms and is duly sworn to by the affiant, complies with the provisions of the federal statute. See in the Matter of Strauss, 197 U.S. 324, at page 331, 25 S.Ct. 535, at page 537, 49 L.Ed. 774, where the court said: "* * * in the strictest sense of the term a party is charged with crime when an affidavit is filed, alleging the commission of the offense, and a warrant is issued for his arrest * * *." Thus, it appears that the duly authenticated and verified complaint and the warrant in the instant proceedings do not bear the infirmities that were present in the documents involved in the cases of Ex parte Hart, 4 Cir., 63 F. 249, 28 L. R.A. 801, and U. S. ex rel. McCline v. Meyering, 7 Cir., 75 F.2d 716. In fact the sufficiency of a similar complaint and warrant in extradition proceedings was upheld in the case of Riley v. Colpoys, 66 App. D.C. 116; 85 F.2d 282. Therefore, the court holds that the objections to the form and sufficiency of the verified complaint and the warrant in the instant proceedings are without substantial grounds and are overruled.

■ Turning next to the petitioner's contention that the present extradition proceedings were not instituted and prosecuted in good faith. It has been held repeatedly that where a person has been ordered extradited to another State, the motives or purposes of prosecution or of the Governor of the demanding State cannot be inquired into in habeas corpus proceedings. See People ex rel. Carr v. Murray, 357 Ill. 326, 192 N.E. 198, 94 A.L.R. 1487; 22 Am. Jur. 254.

The last and principal point raised by the petitioner is that he did not flee from the State of Michigan after the commission of a crime, and that therefore he is not a fugitive from justice in the State of Michigan.

It is conceded that the petitioner was not within the State of Michigan on March 9, 1947. In support of the contention that, therefore, he is not a fugitive from justice, petitioner relies chiefly upon the case of Hyatt v. New York, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657. In that case the relator was arrested in New York for extradition to the State of Tennessee, to answer charges that he had committed various criminal acts in the State of Tennessee on specified dates. Upon his arrest, he filed his petition in the New York Courts for a writ of habeas corpus and at the hearing thereon it was conceded that the petitioner had not been in the State of Tennessee on the dates charged in the indictment and that he did not enter that State until eight days after the date of the last criminal act alleged in the indictments. The import of the decision of the Supreme Court in upholding relator's discharge appears at page 719 of the opinion in 188 U.S., at page 462 of 23 S.Ct. 462:

"The subsequent presence for one day (under the circumstances stated above) of the relator in the state of Tennessee, eight days after the alleged commission of the act, did not, when he left the state, render

him a fugitive from justice within the meaning of the statute. There is no evidence or claim that he then committed any act which brought him within the criminal law of the state of Tennessee, or that he was indicted for any act then committed. The proof is uncontradicted that he went there on business, transacted it, and came away. The complaint was not made, nor the indictments found, until months after that time. His departure from the state after the conclusion of his business cannot be regarded as a fleeing from justice within the meaning of the statute. He must have been there when the crime was committed, as alleged, and if not, a subsequent going there and coming away is not a flight.

"We are of opinion that, as the relator showed without contradiction and upon conceded facts that he was not within the state of Tennessee at the times stated in the indictments found in the Tennessee court, nor at any time when the acts were, if ever, committed, he was not a fugitive from justice within the meaning of the Federal statute upon that subject, and upon these facts the warrant of the governor of the state of New York was improperly issued, and the judgment of the Court of Appeals of the state of New York discharging the relator from imprisonment by reason of such warrant must be affirmed."

The court believes that the inapplicability of the holding in the Hyatt case to the facts in the case at bar can be shown by a review of the evidence that was submitted with the requisition papers. All of those documents were received in evidence at the hearing in the instant proceedings. The documents included, in addition to the authenticated copies of the complaint and warrant, the sworn affidavits of William Martin, a participant in the offense of which petitioner is now charged and of Menso R. Bolt, the prosecuting attorney for the County in the state of Michigan, wherein the city of Grand Rapids is located. The affidavit of William Martin describes the participation of himself and the petitioner in events leading to the commission of the crime charged, and the affidavit of Menso R. Bolt states the same facts as having come to his knowledge through his investigation of the offense.

The verified affidavit of William Martin dated July 22, 1947, states that he lived in Chicago and had known the petitioner Raymond Miller for three years. That on the 7th day of March, 1947, Martin received a telephone call in Chicago from one Wellington Hurst who was then in Grand Rapids, Michigan; that in this telephone conversation Hurst advised Martin that there was $38,000.00 in Grand Rapids that he and others were trying to get, and requested Martin to get in touch with Raymond Miller, the petitioner, and arrange for both Martin and petitioner to drive to Grand Rapids, Michigan, on the same day, March, 7, 1947, to meet Hurst and others at a railway station in a colored neighborhood in Grand Rapids.

The affidavit further recites that after the telephone conversation with Hurst, Martin got in touch with the petitioner, advised him of the conversation with Hurst, and that Martin and petitioner then drove, in the petitioner's car, from Chicago to the city of Grand Rapids, Michigan, where they arrived in the afternoon of March 7, 1947 to confer with Hurst in regard to the $38,000.00. That upon reaching the city of Grand Rapids at about 4:30 p. m. on March 7, 1947, Martin and the petitioner were unable to locate Hurst and his associates; that Martin then purchased a tire for the petitioner's car and both returned to Chicago on the same day in the petitioner's car; that on March 8, 1947, Martin got in touch with Hurst and his associates in Chicago and conferred with them about the location of the $38,000.00 in Grand Rapids, Michigan; that Hurst and his associates assured Martin that the money was in Grand Rapids in the home of relatives of one Arrington who is named in the complaint as one of the persons assaulted with intent to rob; that Hurst and his associates advised Martin that they desired to use the petitioner's car to return to the city of Grand Rapids to obtain the $38,000.00 and requested Martin and the petitioner to accompany them. The af-

fidavit recites that Martin conveyed this conversation to the petitioner with the assurance that the $38,000.00 was actually located in the home of Arrington's relatives in Grand Rapids, Michigan, and that he requested the petitioner to accompany Martin and the other conspirators to the city of Grand Rapids, Michigan, to obtain the money.

The affidavit of Martin recites also that the petitioner permitted Martin and the other conspirators to use his automobile to return to the city of Grand Rapids, Michigan, with the understanding and agreement between Martin and the petitioner that they would share equally in Martin's cut of the $38,000.00.

Martin's affidavit does not give the date of the return to the city of Grand Rapids, but the date of the offense of assault with intent to rob—armed, as charged in the complaint is March 9, 1947. Martin's affidavit describes the commission of the crime charged by stating that all of the conspirators except petitioner did drive to Grand Rapids in petitioner's car and that upon arriving there the entire group, except Martin, who remained in the car, entered the home of Arrington's relatives; that while the other men were in the home attempting to extract the $38,000.00 they were interrupted by Grand Rapids police officers; that Stewart, one of the conspirators, left the home and joined Martin in the petitioner's car; that Martin and Stewart then drove from Grand Rapids to Detroit and from there to Chicago and upon reaching Chicago, Martin returned the car to the petitioner.

The affidavit of Martin also sets forth certain conversations that he had with petitioner after Martin returned to Chicago in regard to concealing himself until the investigation of the attempted robbery had subsided; and to the effect that the petitioner gave Martin $200.00 and requested him to go to California but that Martin went to Brooklyn, New York, instead where he remained for about a week and a half until he was arrested by Brooklyn police and returned to the city of Grand Rapids, Michigan. Martin has entered a plea of guilty to the crime that is charged against the petitioner.

The salient factor which distinguishes the instant case from the case of Hyatt v. New York, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657, is the statement in the affidavit of Martin which was submitted with the other requisition papers, that on March 7, 1947, pursuant to instructions spoken over the telephone in Grand Rapids, Michigan, and received in Chicago, Illinois, Martin and the petitioner joined up with an illegal enterprise and in furtherance thereof drove in the petitioner's car from Chicago to the city of Grand Rapids, Michigan, to meet with associates who were already in Grand Rapids for the purpose of extracting $38,-000.00 from the home of Arrington's relatives in Grand Rapids. Upon failing to meet their associates in Grand Rapids, Martin and the petitioner purchased a tire for petitioner's car and then returned to Chicago. Two days later on March 9, 1947, Martin and his associates drove from Chicago to the city of Grand Rapids in the petitioner's car, again for the purpose of accomplishing the illegal extraction of the same $38,000.00, and committed the offense which is charged in the certified complaint. The use of petitioner's car on the second trip to Grand Rapids was with petitioner's consent and pursuant to an understanding between Martin and petitioner that they would divide Martin's share of the $38,000.00.

At the hearing in the instant proceedings, counsel for the petitioner admitted, for what it was worth, that the petitioner was in the city of Grand Rapids on March 7, 1947. To that extent, at least, the truth of the contents of Martin's affidavit is admitted. Whether all of the statements in Martin's affidavit are true or false, cannot be decided by this court in these proceedings. See Munsey v. Clough, 196 U.S. 364, at page 375, 25 S.Ct. 282, at page 285, 49 L.Ed. 515, where the court said: "But the court will not discharge a defendant arrested under the governor's warrant where there is merely contradictory evidence on the subject of presence in or absence from

the state, as habeas corpus is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused." Also see Strassheim v. Daily, 221 U.S. 280, 286, 31 S.Ct. 558, 55 L.Ed. 735.

Although the authenticated and verified complaint charges the petitioner as a principal with the commission on March 9, 1947, of the offense of assault with intent to rob, under Michigan law c. 7, Section 39, Act No. 175, P.A. of Michigan, 1927, an accessory to a crime can only be charged as a principal. Therefore, the question of whether the presence of the petitioner in the city of Grand Rapids, Michigan, on March 7, 1947, constitutes guilty participation under Michigan law in the offense that was committed on March 9, 1947, in Grand Rapids, is for the courts of Michigan to decide.

Does the fact that the petitioner was present in Grand Rapids, Michigan, on March 7, 1947, in the circumstances outlined above, demand the removal of the petitioner to the State of Michigan under the Governor's warrant to answer the charge of the crime that was committed on March 9, 1947; or must the petitioner have been within the State of Michigan on March 9, 1947 in order to have become a fugitive from justice in the state of Michigan, under the holding in the case of Hyatt v. New York, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657?

In the case of Strassheim v. Daily, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735, Daily, who resided in the city of Chicago, Illinois, was indicted in the state of Michigan for the offenses of bribery and obtaining money by false pretenses from the state of Michigan. The offenses were alleged to have been committed by Daily and one Armstrong, who was warden of the Michigan State Prison. Daily, with the assistance of Armstrong, obtained a contract to sell new machinery to the state of Michigan for the sum of $10,000.00 and after the execution of the contract, he delivered used machinery to the state of Michigan of much less value than new machinery and accepted payment

for new machinery. The indictment alleged the offenses of obtaining money by false pretenses as having been committed on May 1, 1908, and the offense of bribery as having been committed on May 13, 1908. On both of these dates defendant Daily was in Chicago. However, the evidence showed that in July, 1907, Daily and Armstrong had a conversation in Chicago in regard to the deal, at which time Daily promised Armstrong at least $1,000.00 for his assistance in substituting old machinery for new machinery in the event that Daily obtained the contract with the state of Michigan to supply certain new machinery. The successful bid for the sale of the machinery was sent in to the Board of Control in Michigan on July 22, 1907, and Daily was with the Board of Control in Michigan when the bid was considered and accepted. He also was in Michigan in November, 1907, to inspect the machinery and later in April, 1908 Daily visited the prison in Michigan in further execution of the enterprise arranged by himself and Armstrong. The affidavit of Armstrong was submitted with the requisition papers and stated that Daily did substitute old machinery for new machinery, and that thereafter Daily paid Armstrong $1500.00. In holding that the writ of habeas corpus should not be granted and that Daily should be extradited to the state of Michigan, Justice Holmes of the Supreme Court said, 221 U.S. at pages 284–285, 31 S.Ct. at page 560:

"If a jury should believe the evidence, and find that Daily did the acts that led Armstrong to betray his trust, deceived the board of control, and induced by fraud the payment by the state, the usage of the civilized world would warrant Michigan in punishing him, although he never had set foot in the state until after the fraud was complete. Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power. Com. v. Smith, 11 Allen,

[Mass.] 243, 256, 259; Simpson v. State, 92 Ga. 41, 17 S.E. 984, 22 L.R.A. 248, 44 Am.St.Rep. 75; American Banana Co. v. United Fruit Co., 213 U.S. 347, 356, 29 S. Ct. 511, 53 L.Ed. 826, 832, 16 Ann.Cas. 1047; Com. v. Macloon, 101 Mass. 1, 6, 18, 100 Am.Dec. 89. We may assume, therefore, that Daily is a criminal under the laws of Michigan.

"Of course, we must admit that it does not follow that Daily is a fugitive from justice. Hyatt v. New York, 188 U.S. 691, 712, 23 S.Ct. 456, 47 L.Ed. 657, 661; 12 Am.Crim.Rep. 311. On the other hand, however, we think it plain that the criminal need not do within the state every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material step toward accomplishing the crime, and then absents himself from the state and does the rest elsewhere, he becomes a fugitive from justice when the crime is complete, if not before. In re Cook, C.C., 49 F. 833, 843, 844; Ex parte Hoffstot, C.C., 180 F. 240, 243, In re Sultan, 115 N.C. 57, 20 S.E. 375, 28 L.R.A. 294, 44 Am.St.Rep. 433.

"For all that is necessary to convert a criminal under the laws of a state into a fugitive from justice is that he should have left the state after having incurred guilt there. (Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544), and his overt act becomes restrospectively guilty when the contemplated result ensues. Thus, in this case, offering the bid and receiving the acceptance were material steps in the scheme, they were taken in Michigan, and they were established in their character of guilty acts when the plot was carried to the end, even if the intent with which those steps were taken did not make Daily guilty before. Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518, 524.

"We have given more attention to the question of time than it is entitled to, because of the seeming exactness of the evidence. But a shorter and sufficient answer is to repeat that the case is not to be tried on habeas corpus, and that when, as here, it appears that the prisoner was in the state in the neighborhood of the time alleged, it is enough."

In the case of Ex parte Hoffstot, C.C., 180 F. 240, (cited in the opinion of Justice Holmes in Strassheim v. Daily) Hoffstot was ordered removed from the State of New York to the State of Pennsylvania as a fugitive from justice upon an indictment returned in Pennsylvania, charging him and others with conspiracy to bribe members of the council of the city of Pittsburgh to pass an ordinance designating certain banks in which Hoffstot was interested as depositaries for the public funds of the city of Pittsburgh. Hoffstot filed his petition for habeas corpus to test the legality of his detention upon the ground that he was not in the state of Pennsylvania on the date of the offenses as charged in the indictment. At the hearing before the governor of New York it was admitted that Hoffstot was in New York and not in the state of Pennsylvania on June 3, 1908, the date of the offenses, but it was also admitted that he was in Pittsburgh in the latter part of April and on the 28th of May, and on the 29th of June, 1908. The court held that the writ should be dismissed and the petitioner extradited, saying, 180 F. at page 243: "It is well settled that the purpose with which a man who has committed a crime in a state leaves it is immaterial. It is not necessary to prove that he fled from fear of arrest. If he has committed a crime in a state, and afterwards leaves it, the right of extradition exists. Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544. The provision for the extradition of criminals is essential to the efficient administration of criminal justice. When an indictment and the requisition papers issued by the Governor of the demanding state are regular and sufficient upon their face, and when there is some evidence which, although not of a very satisfactory kind, is sufficient to satisfy the Governor of the surrendering state, and he has issued his warrant for extradition, it is well settled that the judiciary should not interfere on habeas corpus and discharge the prisoner upon technical grounds, unless it is clear

that the Governor's action in issuing the warrant plainly contravenes the law. Compton v. Alabama, 214 U.S. 1, 29 Sup. Ct. 605, 53 L.Ed. 885 [16 Ann.Cas. 1098]; In re Strauss, 2 Cir., 126 F. 327, 63 C.C.A. 99."

The holding in the case of In re Cook, C.C., 49 F. 833, (also cited in the opinion in Strasshcim v. Daily) likewise supports the principle that to be a fugitive from justice, a person need not be within a state at the time of the actual commission of a crime if he has previously been within that state in furtherance of the criminal purpose.

The court is of the opinion that the facts in the instant proceedings fall squarely within the decision of Strassheim v. Daily, 221 U.S. 280, 31 S.Ct. 558, 55 L. Ed. 735, and must be governed by the holding in that case. When petitioner and Martin carried out the instructions received over the telephone from Grand Rapids, Michigan, on March 7, 1947, by driving from Chicago to Grand Rapids on that date in petitioner's car, they joined an illegal venture having as its object the perpetration of a robbery in Grand Rapids, Michigan, which was subsequently committed on March 9, 1947. When Martin and petitioner returned to Chicago, they did not withdraw from the venture. Both continued their association in the unlawful enterprise and their efforts to accomplish its purpose—Martin by actually participating in the attempted execution of the crime on March 9, 1947, and petitioner by permitting the actual perpetrators of the offense to use his car to drive from Chicago to Grand Rapids, Michigan, upon the understanding that he would receive half of Martin's share of the $38,000.00.

Therefore, the court holds that petitioner is a fugitive from justice in Michigan, and

It is ordered that the writ be discharged and the petitioner remanded to the custody of the Sheriff of Cook County, Illinois, to be delivered to the agent of the State of Michigan in accordance with the warrant of the Governor of the State of Illinois.