## STATE v. CHARLES C. HINSON.

(Filed 22 January, 1936.)

1. **Parent and Child A b—Evidence held sufficient for jury on charge of willful abandonment and failure to support minor child.**

   Evidence that the prosecuting witness and defendant were married in another state and there separated, that later defendant returned to the home of his parents in this State, and that prosecuting witness thereafter returned to live with her parents residing in the same city in this State, bringing with her her infant daughter born of the marriage, and that defendant refused to support said minor child although repeated demands were made on him after the parties had returned to the State, *is held* sufficient to overrule defendant's motion as of nonsuit in a prosecution for willful abandonment and failure to support his minor child, C. S., 4447, the amendment of the statute by ch. 290, Public Laws of 1925, providing that the abandonment by the father of a minor child shall constitute a continuing offense.

2. **Same: Criminal Law D a—Offense of willful abandonment and failure to support minor child held committed in this State.**

   Evidence that the prosecuting witness and defendant were married in another state and there separated, that later defendant returned to the home of his parents in this State and that the prosecuting witness thereafter returned to live with her parents residing in the same city in this State, bringing with her her infant daughter born after the marriage, and that defendant refused to support said minor child although repeated demands were made on him after the parties had returned to this State, *is held* to show that the offense of willful abandonment and failure to support said minor child was committed by the defendant in this State, since the amendment of C. S., 4447, by ch. 290, Public Laws of 1925, provides that the abandonment by the father of a minor child shall constitute a continuing offense, and defendant's prayer for a directed verdict of "not guilty," based upon his contention that the offense, if any, committed by defendant was committed in another State, was properly refused.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Small, J.,* and a jury, at May Term, 1935, of WAYNE. No error.

This is a criminal action, originally instituted in the court of T. A. Henley, a justice of the peace for Goldsboro Township, Wayne County, N. C., by a warrant of arrest issued by said justice of the peace on information sworn to before said justice of the peace and charging that the defendant, "At and in said county of Wayne, ............ Township, on or about 13 March, 1934, did unlawfully, willfully abandon his wife and child and has failed to provide any support for his infant child before or since birth, the said child being the issue of the marriage between affiant and defendant."

On the trial in the Superior Court the defendant was found guilty by a jury. Judgment was pronounced on the verdict, from which defendant excepted and assigned error.

The testimony of the State's witness, Mrs. Winnie Hinson, was to the effect: She was raised in Goldsboro, N. C., and lived there with her father and mother. When she was married she was 17 years of age and was in Baltimore, Md., and married defendant in Elbert City, Md., on 28 August, 1933—he was 20 years old. "I just went up there and we were married and I came back here." Defendant stayed with her until October, 1933. Their child, Christine Viola Hinson, was born on 3 January, 1934, and she came back to Goldsboro 22 February, 1934, bringing their child. Defendant came to Goldsboro on 24 December, 1933, "to live as his home," and is living with his parents. "He hasn't given a penny to her since she was born or before. He has not given the child any clothes. He has not given her any milk, and he has not given her any medicine. I wrote and asked him for some medicine and he wouldn't answer it, wouldn't send it or send the money to get it. I went to the store in Goldsboro, N. C., and asked him for medicine while my child was sick and he wouldn't give it to me. He did not ever give me any. He has never given me any provisions when I asked him for them. He has never given me anything for myself since we have been married except four dollars. . . . I have seen him and had a conversation with him since I have lived in town. He came to see the baby while I was living on Slocumb Street, Goldsboro, N. C., with my father and mother. . . . He came and asked me to live with him, in Goldsboro, N. C. He was going to get a job that month. He said that he would have lived with me a long time ago but for his daddy and brother, but said if he lived with me they would put him on the roads. He has never lived with me. He did not go back. He promised to come back that night, but he didn't come. . . . He did not come back. Since that time he has not provided any support for me. He has not provided food, clothing, or money, or any of the necessities of life for this child. He has never denied that the child was his. He admitted that the child was his in Goldsboro when he came to see me. . . . As a matter of fact, the wedding was the result of my necessity. At that time I was a girl 17 years old, who has become pregnant and Charles married me to give my baby a father. That's the truth of it. . . . He said he would support the child if it wasn't for his daddy, his parents. Said as far as he was concerned he would support the child. This conversation occurred that Sunday afternoon when the baby was about six or seven months old and he has not done anything at all of that sort. . . . I had another conversation with my husband other than the one that I testified to having had when I was on the stand a few moments ago. One night in

Goldsboro, N. C., my sister and I went to walk. I saw him in a girl's house and I knocked on the door and he came out. I asked him to talk with me about the baby and he said he couldn't that night because he was drinking, but that he would talk with me Monday night; and he told me to meet him at the corner. I told him that I didn't want to meet him at the corner; but I met him and he asked me to go to the show with him. I told him I didn't want to go to the show. I asked him what he was going to do about the baby. He cursed the baby and hit me then and said he didn't want to see the baby no more. I had my hands up like this and he hit me on the hand. . . . This conversation occurred on Walnut Street, Goldsboro, N. C., about 7 o'clock at night. . . . The baby at that time was about 3 or 4 months old. I believe this conversation occurred since I testified before Mr. T. A. Henley, the magistrate who conducted the preliminary hearing in this matter. . . . Any way, my husband has not furnished me or my baby any support and hasn't lived with me since we have been back in North Carolina."

Defendant in apt time requested the following prayer for instruction: "The court charges you, gentlemen, that all of the evidence tends to show that the acts of the defendant complained of by the State of North Carolina, and for which he stands charged with the crime of abandonment and nonsupport, as alleged in the warrant under which he has been tried, were committed in the State of Maryland and, therefore, there has been no offense committed by the defendant Charles Hinson in the State of North Carolina, and you, therefore, must return a verdict of not guilty." To the refusal of the court to give the foregoing instruction, the defendant excepted and assigned error.

The defendant introduced no evidence, but made numerous exceptions and assignments of error, and many to the charge of the court below. On the exceptions and assignments of error made by defendant he appealed to the Supreme Court.

*Attorney-General Seawell and Assistant Attorney-General Aiken for the State.*

*Scott B. Berkeley for defendant.*

CLARKSON, J. At the close of the State's evidence the defendant made a motion in the court below (N. C. Code, 1935 [Michie], sec. 4643) for judgment of nonsuit. The court below overruled this motion, and in this we can see no error.

The defendant was charged with violating N. C. Code, 1935 (Michie), sec. 4447: "If any husband shall willfully abandon his wife without providing adequate support for such wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor: Provided,

that the abandonment of children by the father shall constitute a continuing offense and shall not be barred by any statute of limitations until the youngest living child shall arrive at the age of eighteen years." Section 4447, C. S., by chapter 290, Public Laws 1925, was amended by adding the following: "Provided, that the abandonment of children by the father shall constitute a continuing offense, and shall not be barred by any statute of limitations until the youngest living child shall arrive at the age of eighteen years." *S. v. Bell,* 184 N. C., 701.

In *S. v. Jones,* 201 N. C., 424, at pp. 425-6, it is said: "The object of the statute is to enforce the obligation, not by subjecting the father to a civil action at the instance of the children, but by the infliction of punishment for his dereliction. It would be a plain evasion of the legislative intent to hold that by suffering the penal consequences of a single violation of the statute the defendant could consign his destitute children to the embrace of charity and thus absolve himself from liability to further prosecution. Wharton defines a continuing offense as a transaction or a series of acts set on foot by a single impulse, and operated by an unintermittent force, no matter how long a time it may occupy. Crim. Pleading, 474. It is an offense which continues day by day. *S. v. Hannon,* 168 N. C., 215; *S. v. Beam,* 181 N. C., 597. The statute in express terms constitutes the abandonment of children by the father a continuing offense. The prosecution of an offense of this nature is a bar to a subsequent prosecution for the same offense charged to have been committed at any time before the institution of the first prosecution, but it is not a bar to a subsequent prosecution for continuing the offense thereafter, as this is a new violation of the law. 16 C. J., 268, sec. 447. This general principle is fortified by the distinct provision that the statute of limitations shall not bar prosecution until the youngest living child shall arrive at the age of eighteen years."

In *S. v. Cook,* 207 N. C., 261 (262), we find: "The word 'willfully' as used in the statute under which the defendant was charged is used with the same import as in the act relating to willful abandonment of wife by husband, C. S., 4447, and what is said in the case of *S. v. Falkner,* 182 N. C., 793, as to the effect of the use of the word 'willful' in a criminal statute is here applicable. In that case the present *Chief Justice* says: 'Willfulness is an essential element of the crime, and this must be found by the jury. The issue, upon an indictment for a violation of the present law, is the alleged guilt of the defendant. He enters on the trial with the common-law presumption of innocence in his favor. When the State has shown an abandonment and the defendant's failure to provide adequate support, the jury may infer from these facts, together with the attendant circumstances, and they would be warranted in finding, if they are so satisfied beyond a reasonable doubt, that it had been done

intentionally without just cause or legal excuse, *i.e.*, willfully. *S. v. Taylor,* 175 N. C., 833.' To the same effect are the more recent cases of *S. v. Johnson,* 194 N. C., 378; *S. v. Yelverton,* 196 N. C., 64; *S. v. Roberts,* 197 N. C., 662." *S. v. Parker, ante,* 32.

From a careful examination of the whole record, we think the court below tried the case in conformity with the statute on the subject and the decisions of this Court. We do not think that the exceptions and assignments of error to the judgment, refusal to give instructions prayed for by defendant, and those made to the charge of the court below can be sustained.

On the record we see no prejudicial or reversible error.

No error.

DEVIN, J., took no part in the consideration or decision of this case.