**UNITED STATES ex rel. MILLER v. WALSH.**

**No. 10038.**

United States Court of Appeals, Seventh Circuit.

May 8, 1950.

Joseph E. Clayton, Jr., Chicago, Ill., for appellant.

Berton Sevensma, ·Assistant Prosecuting Attorney, Grand Rapids, Mich., John S. Boyle, State's Attorney, James V. Cunningham, Assistant State's Attorney, Chicago, Ill., by John T. Gallagher, Assistant State's Attorney, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

MAJOR, Chief Judge.

Raymond Miller (petitioner) filed his petition in the court below for a writ of habeas corpus to obtain his discharge from the custody of the Sheriff of Cook County, Illinois, by whom he was being held for extradition to the State of Michigan, to answer the charge of assault with intent to rob—armed, alleged to have been committed within that State. After a hearing the court rendered a memorandum opinion and, on September 13, 1949, entered the order appealed from, discharging the writ and remanding petitioner to the custody of the Cook County Sheriff, to be delivered to the agent of the State of Michigan in accordance with the warrant of the Governor of the State of Illinois.

The petitioner alleged that he was illegally taken in custody by the Cook County Sheriff upon a Governor's warrant issued by the Governor of the State of Illinois upon the request of the Governor of the State of Michigan; that said warrant was based upon certain documents presented or caused to have been presented by the representatives of the State of Michigan to the Governor of the State of Illinois, charging the petitioner with the crime of "assault with intent to rob—armed," on March 9, 1947, in the City of Grand Rapids in the State of Michigan, said offense alleged to have been in violation of the laws of that State.

Three issues were considered by the court below and are stated by the petitioner as contested issues here, (1) whether petitioner was a fugitive from justice in the State of Michigan, (2) that the authenticated complaint filed with the Governor of the State of Illinois was neither a valid indictment nor affidavit made before a magistrate as required by the United States statute, and (3) that the warrant of extradition was issued on information based only on the information and belief of the City Attorney of Grand Rapids, Michigan. No attempt has been made by the petitioner in this court to sustain these last two named issues, either by brief or otherwise, and we assume that they have been abandoned. The only issue for decision, therefore, is whether petitioner was a fugitive from justice within the meaning of clause 2, Sec. 2 of Article 4 of the United States Constitution, and Sec. 662, Title 18 U.S.C.A. [1948 Revised Criminal Code, 18 U.S.C.A. § 3182], enacted pursuant to the constitutional provision.

The facts, while somewhat lengthy, are not in dispute, and for the purpose of a de-

cision of the question before us may be briefly stated. As noted, the crime charged against petitioner was alleged to have been committed on March 9, 1947. On that date, petitioner, a resident of the State of Illinois, admittedly was not in the State of Michigan, and it is also admitted that the date alleged was not an erroneous date. At the hearing below, there was offered in evidence the papers and documents relative to the extradition proceeding, including authenticated copies of the complaint and warrant and the affidavit of one William Martin, who allegedly was a participant in the commission of the crime charged against petitioner.

The affidavit of Martin, dated July 22, 1947, states that he lived in Chicago and had known petitioner for three years, that on March 7, 1947, Martin received a telephone call in Chicago from one Wellington Hurst, who was then in Grand Rapids, Michigan, in which Martin was advised that there was $38,000 in Grand Rapids which Hurst and others were trying to get, and Martin was requested to get in touch with petitioner and arrange for him and Martin to drive to Grand Rapids, Michigan, on the same day to meet Hurst and others at a railway station in a colored neighborhood in Grand Rapids. In pursuance of the telephone conversation with Hurst, Martin got in touch with petitioner and advised him of the conversation with Hurst. Thereupon, Martin and petitioner, on March 7, 1947, drove in petitioner's car from Chicago to Grand Rapids, to confer with Hurst relative to the $38,000. Upon reaching Grand Rapids, at about 4:30 p.m. on March 7, 1947, Martin and petitioner were unable to locate Hurst and his associates. Martin then purchased a tire for petitioner's car and both returned to Chicago on the same day in petitioner's car. On March 8, 1947, Martin got in touch with Hurst and his associates in Chicago and conferred with them about the location of the $38,000 in Grand Rapids. At this conference Hurst and his associates assured Martin that the money was in Grand Rapids in the home of relatives of one Arrington, who is named in the complaint as one of the persons assaulted with intent to rob; that Hurst and his associates advised Martin

that they desired to use petitioner's car to return to Grand Rapids to obtain the $38,000, and requested Martin and petitioner to accompany them. (This last related conference between Hurst and Martin was out of the presence of petitioner.) The affidavit states that Martin conveyed this conversation to petitioner with the assurance that the $38,000 was actually located at the home of Arrington's relatives in Grand Rapids and requested petitioner to accompany Martin and the other conspirators to Grand Rapids to obtain the money.

The affidavit further recites that petitioner permitted Martin and the other conspirators to use his automobile to return to Grand Rapids, with the understanding and agreement between Martin and petitioner that they would share equally in Martin's cut of the $38,000. The affidavit describes the commission of the crime charged (alleged to have been committed on March 9, 1947) by stating that all of the conspirators except petitioner did drive to Grand Rapids in petitioner's car and that upon arriving there, the entire group, except Martin who remained in the car, entered the home of Arrington's relatives and that the men participating in the robbery were interrupted by the Grand Rapids police officers and that Martin, accompanied by one Stewart, returned to Chicago in petitioner's car and delivered it to petitioner. The affidavit also recites that Martin had conversation with petitioner subsequent to his return, in which petitioner suggested that Martin conceal himself until the investigation of the attempted robbery had subsided and gave Martin $200, with the request that he go to California. Martin instead went to Brooklyn, New York, where he was arrested by Brooklyn police and returned to Grand Rapids. Thereupon, Martin entered a plea of guilty to the crime with which petitioner is also charged.

For the purpose of this decision, it must be assumed that petitioner was in the State of Michigan on March 7, 1947 for the purpose and under the circumstances related by Martin. As stated, it is conceded that petitioner was not in Michigan on March 9, the date the alleged crime was committed, and

the record shows that on that day he was in the State of his residence, that is, Illinois. No question is raised but that petitioner might properly be charged as a principal in the commission of a crime in the State of Michigan, even though in the State of Illinois at the time of its commission, on the theory that he was an aider and abettor in the commission of such crime. We therefore need not labor this point but may assume that petitioner was properly charged with the commission of a crime in the State of Michigan.

Petitioner's contention, therefore, that he was not a fugitive from justice rests entirely on the premise that he was in Illinois and not in Michigan on March 9, the date the offense allegedly was committed.

Petitioner relies upon a number of cases in support of his contention, which an examination discloses are of little if any benefit, except that of Hyatt v. People ex rel. Corkran, 188 U.S. 691, 23 S.Ct. 456, 47 L. Ed. 657. It is true in that case, as here, the alleged fugitive admittedly was not in the demanding State where the crime was alleged to have been committed on the dates alleged and was not in that State until some eight days subsequently, when he entered on a business mission. The court, after reviewing the provision of the Federal Constitution and the statute enacted pursuant thereto, held that he was not a fugitive from justice, and in doing so among other things stated 188 U.S. at page 719, 23 S.Ct. at page 462:

"There is no evidence or claim that he then committed any act which brought him within the criminal law of the state of Tennessee, or that he was indicted for any act then committed. The proof is uncontradicted that he went there on business, transacted it, and came away. The complaint was not made, nor the indictments found, until months after that time. His departure from the state after the conclusion of his business cannot be regarded as a fleeing from justice within the meaning of the statute. He must have been there when the crime was committed, as alleged, and if not, a subsequent going there and coming away is not a flight."

In distinguishing the facts of the Hyatt case from those of the instant case, the court below stated:

"The salient factor which distinguishes the instant case from the case of Hyatt v. New York, 188 U.S. 691, 23 S.Ct. 456, 47 L. Ed. 657, is the statement in the affidavit of Martin which was submitted with the other requisition papers, that on March 7, 1947, pursuant to instructions spoken over the telephone in Grand Rapids, Michigan, and received in Chicago, Illinois, Martin and the petitioner joined up with an illegal enterprise and in furtherance thereof drove in the petitioner's car from Chicago to the city of Grand Rapids, Michigan, to meet with associates who were already in Grand Rapids for the purpose of extracting $38,000.00 from the home of Arrington's relatives in Grand Rapids. Upon failing to meet their associates in Grand Rapids, Martin and the petitioner purchased a tire for petitioner's car and then returned to Chicago. Two days later on March 9, 1947, Martin and his associates drove from Chicago to the city of Grand Rapids in the petitioner's car, again for the purpose of accomplishing the illegal extraction of the same $38,000.00, and committed the offense which is charged in the certified complaint. The use of petitioner's car on the second trip to Grand Rapids was with petitioner's consent and pursuant to an understanding between Martin and petitioner that they would divide Martin's share of the $38,000.00."

In addition to the distinction thus shown in the factual situation the court below, as well as respondent here, relies heavily upon Strassheim v. Daily, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735. The result reached in that case upon facts quite similar to those here and the reasoning of the court leads us to the conclusion, as it did the court below, that it is controlling in the instant situation. There, the defendant Daily, a resident of Illinois, was charged in the State of Michigan with bribery and obtaining money from the State by false pretenses. In an extradition proceeding Daily was arrested in Illinois upon the warrant of the Illinois Governor, just as has been done in the instant case. Without detailing the facts, it is sufficient to note that Daily was not in the

State of Michigan on the dates when the criminal offenses were alleged to have been committed. He was in that State, however, on dates previous to those alleged and in connection with the illegal enterprise. The court, after noting that the fact that Daily was not present in the State at the time of the commission of the alleged offenses was no obstacle to his prosecution and punishment in that State, stated in 221 U.S. at page 285, 31 S.Ct. at page 560:

"Of course, we must admit that it does not follow that Daily is a fugitive from justice. Hyatt v. Corkran, 188 U.S. 691, 712, 23 S.Ct. 456, 47 L.Ed. 657, 661, 12 Am.Crim. Rep. 311. On the other hand, however, we think it plain that the criminal need not do within the state every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material step toward accomplishing the crime, and then absents himself from the state and does the rest elsewhere, he becomes a fugitive from justice when the crime is complete, if not before. In re Cook, C.C., 49 F. 833, 843, 844; Ex parte Hoffstot, C.C., 180 F. 240, 243; In re Sultan, 115 N.C. 57, 20 S.E. 375, 28 L.R.A. 294, 44 Am.St.Rep. 433."

And the court concluded by stating 221 U. S. at page 286, 31 S.Ct. at page 560 that it is sufficient if "it appears that the prisoner was in the state in the neighborhood of the time alleged."

Ex parte Hoffstot, cited by the court in the Daily case, is perhaps even a stronger authority against petitioner's position and while this was the opinion of a District Court it takes on added significance because it was affirmed without opinion by the Supreme Court. Hoffstot v. Flood, 218 U. S. 665, 31 S.Ct. 222, 54 L.Ed. 1201. There it was held that a citizen of New York was subject to extradition upon demand of the State of Pennsylvania even though admittedly he was not in the latter State on the date the offense was alleged to have been committed. This result was reached notwithstanding the fact that there was no direct proof that the defendant was in the demanding State prior to the date charged. Circumstantial evidence was relied upon in this respect, which the court referred to as "undoubtedly vague."

The lower court, in concluding that the Daily case is controlling in the instant situation, stated:

"When petitioner and Martin carried out the instructions received over the telephone from Grand Rapids, Michigan, on March 7, 1947, by driving from Chicago to Grand Rapids on that date in petitioner's car, they joined an illegal venture having as its object the perpetration of a robbery in Grand Rapids, Michigan, which was subsequently committed on March 9, 1947. When Martin and petitioner returned to Chicago, they did not withdraw from the venture. Both continued their association in the unlawful enterprise and their efforts to accomplish its purpose—Martin by actually participating in the attempted execution of the crime on March 9, 1947, and petitioner by permitting the actual perpetrators of the offense to use his car to drive from Chicago to Grand Rapids, Michigan, upon the understanding that he would receive half of Martin's share of the $38,000.00."

We think this reasoning is sound, in spite of petitioner's insistence that he committed no act while in Grand Rapids on March 7, which constituted a violation of the laws of the State of Michigan. The argument is that "Petitioner did nothing in Grand Rapids, Michigan, which put the machinery in motion which resulted in the commission of a crime in the State of Michigan either on March 7th or any other day." The short answer to this argument is that the machinery was already in motion and that the trip to Grand Rapids by petitioner on March 7 was merely a part of the activities which culminated in the commission of the crime on March 9. That the plan had already been laid is hardly open to doubt, and that petitioner's trip to Michigan two days before the crime was actually committed was a part of such plan is equally obvious. This trip cannot be isolated from the over-all picture and viewed as an innocent act because it was unsuccessful.

The order appealed from is

Affirmed.